94    71
94   175

CASE 12—PETITION ORDINARY—FEBRUARY 16.

# Cincinnati, &c., R. Co. v. Barker, &c.

APPEAL FROM PULASKI CIRCUIT COURT.

1. RAILROADS— DESTRUCTION OF BUIDLINGS FIRED BY ESCAPING SPARKS. —A land-owner's erection and use of a building for ordinary purposes near a railroad track, although it is more exposed to fire than if it were at a greater distance, is not negligence and will not deprive him of a right of action against the railroad company for the loss of the building by fire, resulting from sparks escaping from a locomotive through the company's negligence.

2. SAME.— A railroad company is liable for the destruction of a storehouse by fire which spread from its depot, which was ignited by sparks escaping from a locomotive through its negligence. The injury is sufficiently proximate.

3. SAME—PLEADING.—In this action to recover for such a loss, the de-

nial of the answer that the defendant "negligently and carelessly set. fire to its depot," is in effect an admission that defendant did set fire to its depot, and is a denial merely that it was "negligently" done.

4. SAME—EVIDENCE.—Although the court struck from plaintiff's petition all allegations as to defendant's negligence growing out of the combustible character of the material in the depot, and defendant's knowledge of the fact, still it was competent for plaintiff to prove the facts thus stricken from his pleading, as the question as to whether {defendant was negligent in the operation of its locomotive, depended, to some extent, upon the character of the surrounding buildings; and, besides, the combustibility of the depot. was a circumstance bearing on the question as to whether the depot was actually fired by the sparks.

5. SAME—INSTRUCTIONS TO JURY.—The jury could not have been misled by an instruction authorizing them to find for plaintiff if they believed the fire was the result of the negligence of defendant in the construction or management of its engine, "or in the construction of its depot." The depot was admittedly fired by sparks which escaped in such quantities as to indicate a disarrangement of the spark arrester, and in whatever way the depot might have been constructed the verdict could not reasonably have been any thing else under the pleadings.

C. B. SIMRALL FOR APPELLANT.

1. No liability for fire where railroad company uses best and most effective preventive to prevent escape of sparks. (Wharton on Negligence, sec. 869; Pierce on Railroads, p. 433; Thompson on Negligence, vol. 1, p. 154; Kentucky Central R. Co. v. Barrow, 89 Ky., 638; L. & N. R. Co. v. Taylor, 92 Ky., 55.)

2. Plaintiff has burden of proving fire originated from defendant's engine. Not sufficient to show *possibility* that injury was caused by the defendant. (Pierce on Railroads, p. 436, and cases cited; *Ibid*, p. 437; Wharton on Negligence, sec. 870, and cases cited.)

3. Not sufficient to show two causes, for only one of which defendant is. liable. (Priest v. Nichols, 116 Mass., 401; Colton v. Wood, 8 Common Bench (N. S.), 568; Thompson on Trials, sec. 1675; Dublin, &c., R. Co. v. Slattery, 3 Appeal Cases, 1155; Metropolitan R. Co. v. Jackson, L. R., 3 Appeal Cases, 197; T. W. & W. R. Co. v. Brannagan, 75 Ind., 490; I. B. & W. R. Co. v. Greene, 106 Ind., 279; Warner v. N. Y. C. R. Co., 44 N. Y., 465; Condell v. N. Y. C. R. Co, 75 N. Y, 330; State v. Maine Central R. Co., 76 Me., 357; Lesan v. Maine Central R. Co., 77 Me., 85; Baulec v. N. Y. & H. R. Co., 59 N. Y., 357; Forty-second St. & G. F. R. Co. v. Hayes, 97 N. Y., 259; Phil. & R. R. Co., v. Shertle, 2 A. & E. Ry. Cases, 158; Com. v. Cozine, 10 Ky. L. R.,. 412.)

Cincinnati, &c., R. Co. v. Barker, &c.

4. Duty of court when requested to instruct jury on every point pertinent to the issue. (Reading v. Metcalf, Hardin, 535; Bell v. North, 4 Littell, 133; Owings v. Trotter, 1 Bibb, 157; Lapish v. Wells, 6 Me., 175.)

5. A party has a right to insist on proper charge in terms in which it is asked. Refusal to give same is error. (Hinton v. Nelens, 13 Ala., 222; Hays v. Bordern, 6 Ill., 46; Campbell v. Day, 16 Vt., 538.)

6. Instruction as to burden of proof was the approved one, and refusal to give same was error. (Sackett on Instructions to Juries, p. 254; De-Beneditti v. Mauchin, 1 Hilton, 213; Long v. Hall, 97 N. C., 286.)

7. Under the pleadings the only issue was, whether or not the depot was set on fire by sparks negligently thrown from defendant's engine, and it was error to permit evidence to go to the jury of the unsafe condition of the depot, or to instruct the jury on that point.

O. H. WADDLE, W. A. MORROW of counsel on same side.

W. O. BRADLEY for appellees.

1. The defendant was liable for damages occasioned by the negligent construction of its depot, or by allowing any combustible matter to accumulate on its right of way. (Pierce on Railroads, p. 432; Salmon v. D., L. & W. Co., 20 Am. Rep., 359; Vaughn v. Taff Vale R'y Co., 5 Hurl. & Norm., 659; Flynn v. S. F. & S. J. R. Co., 6 Am. Rep., 597 and notes; Bass v. C, B. & S. Q. R. Co., 81 Am. Dec., 254; Post v. M. P. R. Co., 12 S. W. Rep., 1131; Gulf, &c, R'y Co. v. Benson, 5 Am. St. Rep., 74; D., L. & W. R. Co. v. Salmon, 23 Am. Rep., 219; Kellogg v. C. & N. R. Co., 7 Am. Rep., 69.)

And it was competent for plaintiff, under the general allegation of negligence, to prove the improper construction of the depot. (Chiles v. Drake 2 Met., 146; L. & N. R. Co. v. Wolfe, 80 Ky., 83.)

2. Plaintiff was entitled to judgment by default, the denials of the answer being in the conjunctive instead of the disjunctive, and otherwise not positive and certain. (Newman's Pleading and Practice, p, 514; Corbin v. Commonwealth, 2 Met., 381; Wood v. Whiting, 21 Barb., 190; Levy v. Bend, 1 E. D. Smith, 169; Preston v. Roberts, 12 Bush, 581; Taylor v. Farmer, 81 Ky., 463.)

3. When the plaintiff shows that his property caught on fire from the defendant's engine, the burden is on defendant to disprove negligence. (Bass v. C., B. & Q. R. Co. (28 Ill., 9), 81 Am. Dec., 254; Sheldon v. Hudson River R. Co., 67 Am. Dec., 155; Norton v. Giles, 90 (N. C.), 374; Deamond v. N. P. R'y (Montana), 13 Pac. Rep., 367; L. & N. R. Co. v. Reece (Ala.), 5 Sou. Rep., 283; M. P. R'y Co. v. T. & P. R'y Co., 41 Federal Rep., 917; Koontz v. Oregon R'y & Nav. Co. (Oregon), 23 Pac. Rep., 820; Burk v. L. & N. R. Co. 19 Am. Rep., 618 (7 Heisk.. Tenn., 451); Bass v. C., B. & Q Co. (28 Ill., 9), 81 Am., Dec., 254; Illinois Central R. Co. v. Mills, 42 Ill., 407; St. L., A.

& T. H. R. Co. v. Montgomery, 39 Ill., 335; Spaulding v. C. & N. W. Co. (30 Wis., 110), 11 Am. Rep., 350; Clemmon v. H. & St. J. R. Co. (53 Mo., 366), 14 Am. Rep., 462; Huyett v. P. & R. Co., 23 Penn. St., 373; Piggot v. E. C. R. Co., Man. Gr. & Scott, 229; s. c., 54 Eng. C. L., 229; Ellis v. P. R. Co., 2 Ire. (N. C.), 138; Hull v. Sacramento R. Co., 14 Cal., 387; A., T. & S. N. R. Co., v. Standford, 12 Kan., 354; Fitch v. Pacific R. Co., 45 Mo., 322; Bedford v. Hannibal & St. J. R., 46 Mo., 456; Coal v. Same, 60 Mo., 227; Clemens v. Same, 53 Mo., 366; Kenny v. Same, 70 Mo., 243; Coats v. M., K. & T. R. Co., 61 Mo., 38; B. & M. R. Co. v. Westorer, 4 Neb., 268; Woodson v. M. & S. P. R. Co., 21 Minn., 60; Case v. N. C. R. Co., 59 Barb., 644; Aldridge v. G. W. R. Co., 3 Man. & G., 515; Pigott v. Eastern Counties Railway, 3 Com. B., 229.)

4. It was competent to show the depot had been fired several times previous to April, 1886, by other engines. (Wharton's Evidence, vol 1, sec. 43, and authorities cited; Pierce on Railroads, p. 439; Wharton's Negligence, sec. 878; Sheldon v. Hudson River R. Co., 67 Am. Dec., 155; M. & P. R. Co. v. Donaldson (Texas), 11 S. W. Rep., 163; Koontz v. Oregon R'y & Nav. Co., 23 Pac. Rep., 820.)

5. The evidence in this case is sufficient to show negligence in the equipment and management of the engine. (Pierce on Railroads, p. 439; Wharton's Negligence, sec. 876; Notes to sec. 2, vol. 8, Am. and Eng. Enc. of Law, title "Fires;" Fero v. B. & S. L. R. Co. (22 N. Y., 209), 78 Am. Dec., 128; Jackson v. C. & N. W. R'y Co. (31 Iowa, 176), 7 Am. Rep., 122; Burk v. L. & N. R. Co. (7 Heisk., 451), 19 Am. Rep., 619; Russell v. Manhattan R. Co., 13 Daly (N. Y.), 11; Ashby v. Manhattan R. Co., *Idem*, 205; Coolege v. Rome, W. & O. R. Co., 5 New York Supp., 301; Johnson v. C. & N. W. R. Co. (Iowa), 42 N. W. Rep., 512; M. P. R'y Co. v. T. P. R'y Co., 41 Fed. Rep., 917; Johnson v. C. & M. R'y Co., 31 Minn., 57; L. & N. R. Co. v. Taylor, 92 Ky., 55.)

6. Contributory negligence can not be relied on unless pleaded. (K. C. R. Co. v. Thomas, 79 Ky., 164; Depp v. L. & N. R. Co., 12 Ky. Law Rep., 366.)

J. L. AND J. W. COLYER OF COUNSEL ON SAME SIDE.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The Barkers, as plaintiffs in the court below, brought suit against the defendant, now appellant, alleging that on the night of April 5, 1889, "the defendant negligently set fire, by sparks and coals from its locomotive, to its depot, which consumed the same, and

which extended to and consumed the storehouse of plaintiff aforesaid. That said negligence of the defendant was the natural, probable and proximate cause of the burning of their said house, and that by such negligent act of defendant, they have been damaged three thousand dollars."

They also made proper averments of ownership and possession of the burnt property, and its location and value.

At the appearance term of the case, October, 1889, they filed an amended petition, and "the defendant not being ready for trial on account of the filing of said pleading," was given a continuance.

The amendment charged that the defendant negligently erected and suffered and permitted its depot to remain near the track, although same—except the shed thereof—was covered with shingles and constantly exposed to fire and sparks emitted from its locomotive, and notwithstanding the fact it was fully aware of such danger, and had been time and again notified of such danger, and knew that fire had been communicated to its said depot and other buildings time and again from such sparks and fire, all of which plaintiffs charge was gross negligence, and that by reason of which negligence the depot was burned, and the fire directly communicated to their building consumed it, &c. Thereupon a demurrer was filed to this amended petition, and also a motion to strike out such parts of it as alleged that the defendant was aware of such danger—referring to the shingle roof and the constant exposure to fire and sparks from the locomotive—and had been notified of such

danger, and knew that fire had been communicated to the depot and other buildings time and again from such sparks and fire.

At the April term, 1890, the court sustained the demurrer to the amended petition, making no order on the motion to strike out. The plaintiffs then filed their amended petition No. 2, alleging that the defendant carelessly and negligently set fire to its depot ("which depot was dangerously combustible") in said South Somerset, by reason of which, &c.

On defendant's motion and over the plaintiffs' objection, the words "which depot was dangerously combustible," were stricken out by the court, and a demurrer to the petition, as amended, was overruled.

The plaintiffs' cause of action, therefore, was this:

"That the defendant negligently set fire, by sparks and coals from its locomotive, to its depot, which consumed the same, and which extended to and consumed the store-house of plaintiffs. That the defendant carelessly and negligently set fire to its depot, by reason of which it was consumed, and the fire from which depot then and there communicated to and with the plaintiffs' building, and was the proximate, probable and natural result of the carelessness and negligence of the defendant as aforesaid."

The defendant then, by one pleading, answered both the original and amended petitions, saying that it was "not true that on the night of April 5, 1889, it negligently set fire to its depot in Somerset, Ky., by sparks and coals of fire thrown from its locomotive, or that it carelessly and negligently set fire to

said depot at the time mentioned, and referred to in the petition," or that "the destruction of the plaintiffs' property referred to and described in the petition was the proximate, probable and natural result of its negligence as alleged in the petition."

These were the pleadings on which the case pro ceeded to trial. Evidently the answer, so far as it attempted to traverse the allegations of the original petition, is, in strictness, not good for any purpose. It may mean that the company set fire to its depot by sparks and coals thrown from its locomotive, but not *negligently;* or it may mean that it negligently set fire to its depot, but not by sparks and coals thrown from its locomotive. The latter could hardly have been intended, and taking it at its best, it is an admission that it set fire to its depot by sparks and coals from its locomotive, but did not do so negligently. In so far as it sought to traverse the statements of the amended petition, the answer, when liberally construed, simply says it is not true that the company *negligently* and *carelessly* set fire to its depot, manifestly admitting as a *fact* that it did fire the depot. Construed strictly, considering the conjunction "and," it might mean to admit that the company in fact fired the depot carelessly, but not negligently, or negligently and not carelessly. But treating the words as synonymous, considered as a whole we think the answer must be taken to be a statement that the company in fact set fire to its depot by sparks and coals thrown from its locomotive, but did not do so negligently *or* carelessly.

The plaintiffs' proof was to the effect that on the

night in question engine No. 58 was fired up, and left a point in Somerset, south of the depot a few hundred yards, pulling northwardly a number of loaded cars; that when it passed the depot it emitted sparks and coals in large quantities, which floated up, over and on the depot, and that shortly thereafter the shingle roof of the structure was seen to·be on fire; the flames spread rapidly, and soon set fire to the house of plaintiffs, which was immediately across the street from the depot, a distance of forty-five feet; that the weather was warm, and there were no fires being kept in the depot building. Plaintiffs also introduced some proof conducing to show that the locomotive used was not supplied with the most improved fire screen and spark arrester; that it slipped badly when on the track in front of the depot, as if it were overloaded; that it worked hard, and threw sparks in unusually large quantities. Under the permission of the court and over the objection of the defendant the plaintiffs proved that the building was in part covered with shingles, and that there were spaces under the eaves of the building where birds had located their nests; and that on several former occasions, in warm weather, when there were no fires in the depot, the same roof had caught on fire just after·a passing train, and that the defendant knew of this, and had in fact repaired the burnt roof.

The defendant's testimony showed that their engine and its screen and spark arrester were of the most improved patterns in use or known to science; that the train was not loaded unusually heavy; that coal, and not wood, was used in firing the engine; that no

sparks were emitted; there was no slipping on the track or any derangement of the engine; moreover, that the fire was seen inside the depot burning more fiercely than on the outside, and may have caught from the inside; that the night was cool, and there was a fire in at least one of the rooms in the building. Its chief carpenter and superintendent of buildings fully explained the construction of the depot, which was covered partly with tin and partly with shingles, and there were no spaces under the eaves where birds could find lodgment for nests.

Upon this state of case the jury, after instruction, found for the plaintiffs the sum of two thousand eight hundred and seventy-five dollars.

It is insisted by counsel for the appellant that although the court had, by its action in sustaining the demurrer to the first amended petition, and in striking out the words "the depot was dangerously combustible" from the second amended petition, narrowed the issue to the negligent setting on fire of defendant's depot; yet the trial was allowed to proceed both as to the evidence and the instructions upon the theory that plaintiffs' cause of action, as set forth in their pleadings, included, or was founded on, negligence growing out of the combustible character of the material in the depot, and on the assumption that such fact was known to the defendant. And it must be conceded that unless this testimony with regard to the combustible nature of the depot legitimately and properly elucidates the issue as made by the pleadings, the defendant was prejudiced by its introduction.

Why was it that the learned judge below, at defendant's instance, or on its motion, sustained the demurrer to the amended petition setting up the very facts which were admitted by the court as evidence on the trial, and why strike out the words respecting the dangerous combustible character of the depot in the second amendment, when proof was immediately admitted before the jury regarding the shingle roof and the open eaves and birds' nests of straw, &c.? Manifestly, because the setting fire to the depot *negligently*, or the *negligence* in setting fire to the depot, by the sparks, depended on the character of the building alleged to have been set afire. *Negligence* is the leading thought.

The instrumentality or active agent of negligence was the locomotive throwing sparks, but upon what? On a tin roof or on a clean plowed field, or on a straw stack, or on a depot covered with straw, or on one covered with shingles and constructed with open eaves? Clearly the negligence in setting fire to a thing by a locomotive depends on the condition, not alone of the machine itself, but on the uses it is being put to—the location and the surroundings—and these are matters of evidence.

The combustibility of the depot was one of the circumstances bearing on the fact of whether the depot was actually fired by the sparks. Had the building been fully fire-proof, would not that fact have furnished evidence against its being set on fire by the sparks? We do not pretend to decide that the mere fact that the depot was covered with shingles, is of itself evidence of negligence. It is not ordinarily so.

But when situated so that, from some reason, it is frequently fired by passing trains, and coupled with the significant proof that the defendant was aware of the combustible material of which the roof was composed, and that it had before been fired by sparks, we are fully prepared to say that if defendant used a spark-throwing locomotive in proximity to such a roof and fired it, it would be "negligently setting fire to the depot by sparks thrown from its locomotive."

With the fact conceded that defendant fired the depot by sparks thrown from its engine, with the fact established that an unusual number of sparks were thrown on the night in question, indicating a disarrangement of the spark arrester, with the knowledge and information brought home to the defendant respecting the previous fires and the dangerous quality of the pine and poplar shingles on the roof of the depot in dry weather, we are of opinion that the instructions on the subject of the construction of the depot could not have been misleading to the jury.

The first instruction reads as follows:

If you believe, from the evidence, that the depot of the defendant, at Somerset, on the night of April 5, 1889, was burned by reason of the negligence of defendant in the construction of its engine, or in the construction of its depot, or in the management of its engines, and the burning of plaintiffs' house was the natural and probable consequence, you will find for the plaintiff, and unless you so believe you will find for the defendant.

The only chance for misapprehension here, on the

part of the jury, was in considering the meaning of "negligence in the construction of its depot," and this was not considered abstractly. No one could know what the expression would mean, or was intended to mean, unless in connection with the proof, and when so considered and the proof in the case applied to the language, it is deprived of any am-biguous or misleading [feature. And this, we think, is true of the second instruction, which embraces this same expression.

The depot was admittedly fired by sparks from the engine, and whether it had, in fact, a shingle roof or other kind, or open or closed eaves, and in whatever way it might have been constructed, the verdict could not reasonably have been any thing else under the pleadings.

Instruction "A," asked by defendant, precluded plaintiffs' recovery if they built their house prior to the building of the depot, and knew of its exposure to fire, &c., and is not the law. "A land-owner's erection and use of a building for ordinary purposes near the track, although it is more exposed to fire than if it were at a greater distance, is not negli-gence." (Pierce on Railroads, p. 435.)

Instructions "B" and "F" were in effect given by the court. "C" and "E," on the question of burden of proof, were wholly inapplicable, and instruction "D" offered on the "care" necessary to be used, was substantially given in the one defining negligence.

Nor is there any doubt as to the injury being suffi-ciently proximate.

"The ignition for which the company is liable need

not take place from the very particles of fire thrown out by its engines." If the fire spreads from the matter first ignited, the intervention of considerable space, diversity of ownership, or various physical objects, &c., does not preclude recovery by the party injured, or affect the company's liability for its first negligent act. (Pierce on Railroads, 441.)

Upon the whole case we think there has been no error prejudicial to the substantial rights of the a pellant. The judgment is therefore affirmed.