### Stone v. Smith.

June 16, 1939.

T. Scott Mayes, Judge.

214

O. B. Bertram for appellant.

Fred Faulkner and H. S. Robinson for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, Thomas F. Stone, is a nephew of G. D. Smith, who died intestate a resident of Taylor County, Kentucky, on June 8, 1935. They resided upon adjoining farms owned by them respectively which were located in that county at the time of some of the transactions here involved. Defendant, however, moved his residence from his farm to the City of Campbellsville, the county seat of the county, in September, 1927, but it appears that he continued thereafter to own and possess his farm. Neighborly and friendly relations existed between nephew and uncle, and on October 18, 1927, the former executed to the latter the note herein sought to be collected, whereby the nephew agreed to pay his uncle twelve months thereafter the sum of $154, which was an asset of his estate at the time of his death, and went into the hands of his son, the appellee and plaintiff below, Guy H. Smith, who qualified as administrator of his father's estate. As such fiduciary he filed this action in the Taylor circuit court against defendant on November 4, 1936, to recover judgment for the amount of the note with interest and costs. To the petition defendant filed answer admitting the execution of the note, but alleged that it should have been paid in the manner set out in another paragraph of that pleading. In another paragraph of the same pleading defendant pleaded and sought recovery upon an offset over and above the amount of the note amounting to $351.28, which he averred was due him from the decedent for gas furnished to the latter by him for domestic purposes and used in his residence and adjacent tenant building, and for which decedent agreed and promised to pay him therefor (beginning October 18, 1927) the sum of $40 for each residence (there being two) per year, and that gas was so furnished from a nearby gas well on defendant's farm until about the middle of the year 1934 when it ceased to flow, and which was about a year before decedent died.

Plaintiff's reply filed to that pleading is not couched in the clearest of terms, since in its first paragraph it attempts to deny the contract to furnish the gas as set up in defendant's answer, or that decedent ever used any gas from defendant's well "which is not satisfied in full," or (as stated elsewhere in the pleading) "which has not been paid for in full." Such qualifying expressions to the denials smack at a left handed effort to plead payment. But the case was not tried on that theory. In another paragraph of the reply plaintiff relied on the Statute of Frauds, claiming that the contract to take and pay for the gas—if there were such a contract —was not to be performed within a year from the time of the making thereof, and was, therefore, in violation of subsection 7 of Section 470 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, which is our Statute of Frauds. In an additional paragraph plaintiff pleaded limitations of five years against any recovery on the set-off for gas rentals, if any, that matured back of that time. Affirmative allegations of the reply were controverted of record, and a jury impaneled to try the case, under the instructions submitted by the court, returned a verdict in favor of plaintiff for the full amount of the note sued on, and disallowed defendant's set-off. Judgment was rendered accordingly and defendant's motion for a new trial was overruled, followed by his prosecuting this appeal.

Only three grounds are relied on in the motion for a new trial as prejudicial errors authorizing the granting thereof, and which are: (1) The admission of incompetent testimony offered by plaintiff over defendant's objections; (2) rejection of competent evidence offered by defendant; and (3) "because the verdict of the jury is not sustained by sufficient evidence and is contrary to law." The last part of ground (3)—"and is contrary to law"—has been held by us in an unbroken line of opinions to present nothing for review by this Court on appeal, and which leaves that ground as containing only the complaint that the verdict "is not sustained by sufficient evidence." Each ground will be disposed of in the order named.

1. The incompetent evidence complained of in ground (1) consisted in the introduction by plaintiff of gas and oil lease contracts of the respective parties to strangers to the action which were made in the years 1922 and 1923. Counsel argue—and we are in accord

therewith—that neither of those contracts had any bearing upon the issues made by the pleadings, and were wholly irrelevant to establish or disprove any of them. It would require much space, as well as unnecessary time, to point out the reasons for that conclusion, since the gas furnishing contract forming the basis of the pleaded set-off was entered into more than five years after the execution of those papers, and was based upon conditions and situations then in existence long after the leases—for one cause or another—were abandoned by the lessees, and the leased property held by the respective owners became unencumbered with them. There was never a well attempted to be sunk on decedent's land by his lessee, but there was one produced on the adjoining farm of defendant, his nephew, which at the beginning flowed more or less gas but not sufficient for marketing purposes. Defendant's lessee, therefore, proposed to abandon the well and surrender the lease to his lessor—the defendant herein—but before doing so he insisted on plugging the well, as required by Section 3910 et seq., of our statutes, and which, if done, would completely destroy all of the flow of gas from it. By the terms of the lease under which the well was sunk, defendant as lessor was given the right to use sufficient gas therefrom for his domestic purposes, and if the well was plugged that right, which was then being exercised, would be destroyed. He, therefore, filed an action against the then owner of the lease, Eastern Carbon Black Company, to enjoin it from plugging the well. He succeeded in the trial court and upon appeal to this Court by the defendant therein we affirmed that judgment in an opinion reported in Eastern Carbon Black Co. v. Stone, 229 Ky. 68, 16 S. W. (2d) 492.

About the time the defendant in that action was threatening to plug the well on defendant's farm—and from which the decedent was then using gas under some arrangement with it—a conference was had between uncle and nephew as to what should be done to prevent the destruction of the well from which both of them were using gas. The apparent result of that conference was a determination that defendant should file the action referred to, to prevent the destruction of the well in the threatened manner, and if done, and the suit should be determined in favor of the nephew, then decedent would continue to use the gas as theretofore, and pay therefor at the rate of $40 per annum for each resi-

dence on his farm that was so supplied. Appellant was barred from testifying under the provisions of Section 606 of our Civil Code of Practice, but he introduced three witnesses, two of whom were his daughters, who were between twelve and fourteen years of age at the date of the disputed contract, but at the time of trial they were considerably older. Their testimony was intelligent and given without confusion. The substance of it was that decedent, on the occasion referred to (which occurred in defendant's residence), entered into the contract upon which he relies as a basis of his set-off. Another witness who was an adult, much over 21 years, was present at the time of the execution of the note herein sued on and on which occasion other transactions occurred between him, the decedent, and defendant. He testified that in those transactions resulting in the execution of the note, settlements of prior transactions were made and in which defendant was given credit for gas that he had consumed under the contract relied on by defendant, and the latter executed his note for the balance due decedent and agreed to credit it with the future accruing annual gas rentals as and when they became due until it was extinguished.

None of that testimony was denied by anyone, except to some extent by the widow of decedent (who some of the witnesses claimed was present on one or the other of the occasions referred to) and who it was claimed heard what occurred. She was introduced by plaintiff and testified that she was not present and that no such rental agreement was ever entered into by her husband on any occasion when she was present. Her testimony was objected to, by defendant's counsel, but the court overruled it and admonished the jury that it was admitted only for the purpose of contradicting the witness for defendant who had stated that she was present. It is that testimony, together with the introduction of the leases to which we have referred, that forms the basis of ground (1). We have no hesitancy in concluding that the widow was an incompetent witness, being made so under subsections 1 and 2 of Section 606, supra, of our Civil Code of Practice; but whether such complained of testimony, though erroneously admitted, would alone be sufficient to authorize a reversal of the judgment we will not now determine, since it must be reversed for other reasons stated below.

2. Ground (2) is not argued in brief, and our at-

tention is called to no testimony offered by plaintiff that the court rejected, and for which reason it requires no discussion or consideration by us, and we will proceed to determine the third and last ground, which we are convinced is amply supported by the record.

3. In discussing ground (1) we set out the testimony supporting the pleaded set-off. That testimony was denied by no other introduced at the trial. It was proven by a number of witnesses without contradiction—and even admitted by plaintiff—that the decedent used gas in his premises from a well on defendant's adjoining farm as long as there was any flow, and had done so from the date or about the date of the sinking of the well. But there was no proof showing upon what terms the gas taken from the lessee before abandonment by it was so furnished. If, however, it was free of charge by the lessee then no obligation to continue its free use by decedent survived to him after the lease was surrendered to defendant. Consequently all subsequent use would have to be governed by agreements between decedent and defendant. The only testimony in the case bearing on that vital issue shows that there was such an agreement and that decedent promised to pay therefor the price charged in defendant's answer. A motion for a peremptory instruction in favor of defendant for an excess judgment prayed for in his answer was made at the close of the testimony, but it was overruled with exceptions, and which ruling is not complained of in the motion for a new trial. If it had been we would be strongly inclined to direct that the motion be sustained on another trial if the evidence was substantially the same. However, being of that opinion necessarily forces the conclusion that the verdict is not sustained by sufficient evidence and for which a new trial should be granted.

Nothing was said or done throughout the trial concerning the defense of the Statute of Frauds, or the defense of limitations. The first one (invasion of the Statute of Frauds) is clearly not available for two reasons—(a) the contract was completely executed by defendant, the consideration of which the decedent received, and (b) the contract from its very nature is one that might have been performed within a year from the time of its making, since the gas may have given out within that time, or decedent may have died within the time, and in either event the contract would terminate.

That defense, therefore, is not available in any event. The plea of limitations would necessarily bar all unpaid annual rentals that had been due more than five years preceding decedent's death, or that were due as much as five years and six months following the appointment of plaintiff as administrator of decedent, but none of those matters were gone into or insisted upon. Another question presented by the pleadings is that of defendant's right to insist on the extinguishment of the note sued on because of decedent's failure to apply the accruing gas rentals for that purpose, as the proven contract obligated him to do, and which right defendant may enforce, notwithstanding the first accruing rentals were not applied for that purpose and are more than five years past due. Perhaps the parties may desire to remodel their pleadings so as to present and determine all such questions after a return of the case, and if so they should be given that privilege.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.